PAUL PFEIFFER *vs.* NATHAN MATTHEWS.

Suffolk.    January 15, 1894. — June 19, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Party Wall.*

In a written agreement between adjoining owners of land that when any portion of a party wall built by either of them " shall be used by the party or by the heirs or assigns of the party by whom the portion of the wall so used was not constructed, he or they shall pay to the party who constructed the same, or to his heirs or assigns, owners of the said premises, one half of the actual cost of the portion of the wall . . . so used by him or them," using the wall means making use of it in the process of the construction of a house on the adjoining lot, and the person using it is the builder of the house, and under such an agreement neither a grantee nor mortgagee of the builder is liable for the cost of the wall so made use of by him.

CONTRACT, to recover one half of the cost of a party wall. Writ dated September 14, 1892.

The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows.

The plaintiff and Nathan Matthews, Jr., who were owners of adjoining lots of land situated on Falmouth Street in Boston, on April 21, 1888, executed an agreement which, after granting to either party thereto the right to erect a party wall on the boundary line of their respective estates, contained a provision that " when any portion of any wall so built, extended, or rebuilt shall be used by the party or by the heirs or assigns of the party by whom the portion of the wall so used was not constructed, he or they shall pay to the party who constructed the same, or to his heirs or assigns, owners of the said premises, one half of the actual cost of the portion of the wall (including the piling and the foundation thereof) so used by him or them." Shortly thereafter, the plaintiff erected such a wall, in accordance with the terms of the agreement.

On April 28, 1888, Nathan Matthews, Jr. conveyed his land to his father, the defendant, who on April 30 conveyed the same to William Bassett, at the same time taking back from him a

mortgage of the land for $11,300. All the conveyances were made subject to the party wall agreement.

In August, 1888, Bassett began the erection of a building on the land conveyed to him, and used the party wall in its construction, but in December, 1888, when the building was completed as far as the first floor, he was adjudged insolvent, and in consequence thereof work on the building ceased until June 20, 1889.

In March, 1889, Bassett received his discharge in insolvency, and in April, 1889, he released all his rights in the premises to the defendant, who on June 15, 1889, again conveyed to him the premises, taking back a mortgage for $11,300 payable in one year, the consideration of which was the agreed price of the land, and the amount of certain advances agreed to be made by the defendant by a contract of even date therewith.

After this, Bassett, on June 20, 1889, resumed work on the unfinished building, and by August, 1889, had the roof in place. The work was paid for by Bassett partially out of advances made by the defendant, and partially from his own resources.

The last named mortgage was on July 18, 1890, assigned by the defendant to one Howe, who on July 28, 1890, made entry to foreclose for breach of condition, and on August 21, 1890, sold the premises by auction, under a power of sale contained in the mortgage, to one Robinson.

Both Howe and Robinson acted entirely in the interest of the defendant, and never had any beneficial interest in the premises, and the defendant received no consideration for his deeds to Bassett except the mortgages taken back from him. The advances by the defendant to Bassett did not exceed sixty per cent of the cost of the building.

The case was argued at the bar in January, 1894, and afterwards was submitted on the briefs to all the judges.

*F. Rackemann*, (*F. V. Balch* with him,) for the plaintiff.

*F. W. Kittredge*, for the defendant.

ALLEN, J. The clause of the agreement upon which the plaintiff's claim rests is as follows: " When any portion of any wall so built, extended, or rebuilt shall be used by the party or by the heirs or assigns of the party by whom the portion of the wall so used was not constructed, he or they shall pay to the party who constructed the same, or to his heirs or assigns, owners

of the said premises, one half of the actual cost of the portion of the wall (including the piling and the foundation thereof) so used by him or them."

Using the wall means making use of it in the process of constructing the house on the adjoining lot, and the builder of such house is the person who uses the wall. Under such an agreement the liability to pay for one half of the cost of the wall does not extend to a grantee of the builder.

The plaintiff however contends that a mortgagee of land which is subject to a party wall agreement is liable as assignee of the covenants for a use of the wall made by the mortgagor. No case has been cited which thus holds, and we see no good reason for establishing such a doctrine. A mortgagee before foreclosure has no estate which can descend to his heirs, but by foreclosure the lien is converted into an estate, and the mortgage is changed from personal to real property. Pub. Sts. c. 133, § 6. *Fay* v. *Cheney*, 14 Pick. 399. *Steel* v. *Steel*, 4 Allen, 417. *Haskins* v. *Hawkes*, 108 Mass. 379. As to everybody but the mortgagee, the mortgagor is the owner until foreclosure. Until then, or at least until entry for breach of condition, the adjoining owner has no concern with the mortgagee. It is the mortgagor alone who is using the party wall by building a house upon his lot.

By the agreed statement of facts, it appears that no work was done upon the wall while the defendant was owner of the adjoining lot. The first stage of the work was done while Bassett was in possession as mortgagor, and the work was stopped owing to his insolvency. It does not appear that the defendant had anything to do with the mortgagor's insolvency or with the stopping of the work. No entry was made for breach of condition. It is stated that while things were in this condition Bassett released all his rights in the premises to the defendant. It would seem that such release could have conveyed nothing, as the title was then in his assignee in insolvency. But assuming that the defendant then became owner of the equity, no work was done while he remained the owner. Soon afterwards he again conveyed the premises to Bassett, taking back a mortgage, and thus Bassett again became mortgagor, and the defendant mortgagee. After this had been done, work on the building was renewed and completed. Nearly a year after its completion, the defendant's mortgage was foreclosed.

The defendant's liability is no greater than if at the time of the foreclosure he had purchased the equity of redemption and taken a deed from the mortgagor. Under the agreement, the heirs or assigns of the original party to the contract are not liable to the plaintiff unless they have used the wall. The wall was used by Bassett alone. The continuance of the building after its erection is not a use of the wall within the meaning of the contract. The defendant's present ownership of the building is not a use of the party wall by him which makes him liable under the contract.

The plaintiff further argues that the conveyance to Bassett was a sham, and that the defendant was virtually the owner all the time. But the case comes before us on an agreed statement of facts. No such fact is agreed, and we cannot draw that inference.            *Judgment for the defendant affirmed.*